# SEYFARTH SHAW LLP
### ATTORNEYS

620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-5629

Writer's e-mail
rwhitman@seyfarth.com

Writer's direct fax
917-344-1258

December 28, 2009

**BY ECF AND FEDEX**

Hon. Raymond J. Dearie
Chief Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:   Agui v. T-Mobile USA Inc.,
               No. 09 CV 2955 (RJD) (RML)

Dear Chief Judge Dearie:

This firm is co-counsel for T-Mobile USA, Inc., defendant in this action. T-Mobile writes in response to the December 21 letter from Dan Getman, co-counsel for plaintiffs, requesting the right to file a motion seeking an Order severely restricting T-Mobile's right to investigate its case and prepare its defenses. Plaintiffs' supposed "urgent" application – submitted a full five months after this case was filed and supported by no new facts (or any facts) which would warrant consideration – asks for relief that courts (including those cited in counsel's letter) have routinely held is inappropriate absent a specific factual showing that plaintiffs do not even attempt to make.

There are two legal principles that govern. The first is that a defendant is permitted to meet with and interview unrepresented potential class members as part of its investigation and defense of the case. *See* 5 A. Conte & H. Newberg, *Newberg on Class Actions* §15:9 (4th ed. 2002) ("[d]efendants are ordinarily not precluded from communications with putative class members . . . .") (citation omitted); *Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d 1082, 1085 (C.D. Cal. 2002) (as a general proposition, "[b]ased on the provisions of [FLSA] §216(b) and the similar Rule 23 precertification situation . . . there is no prohibition against pre-'opt-in' communications with a §216(b) potential plaintiff"). Employers do this as a matter of course in putative class actions of this nature. Plaintiffs' position that such interviews are "inherently coercive," and therefore inherently impermissible and in need of court supervision, is incorrect and inconsistent with established law.

NY1 26603091.5



The second legal principle, which comes directly from the Supreme Court and the numerous courts that have considered this issue, is that a court is empowered to intervene in a defendant's interviews with potential class members only when there has been a specific showing – based on facts, not suspicion or assumption – that in conducting its interviews, the defendant has engaged in some form of abuse or misconduct. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981) (barring federal courts from entering "an order limiting communications between parties and potential class members [absent] specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties"); *Payne v. Goodyear Tire & Rubber Co.*, 207 F.R.D. 16, 21 (D. Mass. 2002) (declining to impose restrictions on defendant's pre-notice contact with potential class members where record contained no evidence that defendant was pressuring plaintiffs "or covertly robbing plaintiffs of their opportunity to participate in the instant litigation"); *Kerce v. West Telemarketing Corp.*, 575 F.Supp.2d 1354 (S.D. Ga. 2008) (restrictions cannot be imposed in the absence of a showing that employer "misrepresented facts about the lawsuit, discouraged participation in the suit, or undermined the class' confidence in, or cooperation with, class counsel"); *Kuhl v. Guitar Center Stores, Inc.*, 2008 WL 5244570, at *4 (N.D. Ill. Dec. 16, 2008) (denying plaintiff's motion to restrict defendant's communication with putative class members).

As reflected in decisions cited by plaintiffs in their letter, the types of abuse that qualify for a restriction on communications are substantial. In *Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985), for instance, the defendant's attorneys instructed bank officers to call putative class members and "do the best selling job they have ever done" in an effort to persuade class members to opt out of the action. Under these stark facts (which also violated a court order prohibiting requests of class members to opt out), the District Court did not hesitate to order corrective communications and impose other substantial sanctions. Another case plaintiffs cite, *Dziennik v. Sealift, Inc.*, 2006 WL 1455464 *3 (E.D.N.Y. 2006), emphasized that courts are authorized to impose restrictions only upon a clear factual showing that communications were "misleading" or designed to interfere with the litigation.

Plaintiffs also offer a selective quotation from *EEOC v. Morgan Stanley & Co.*, 206 F.Supp.2d 559 (S.D.N.Y. 2002), to suggest that the mere "danger" of "coercion between employers and employees" is sufficient to disable defendant from investigating the case through interviews with unrepresented putative class members. Plaintiffs neglect to mention that the court in *Morgan Stanley refused* to impose the substantial restrictions that plaintiffs seek to impose here, noting that *Gulf Oil* prohibits courts from imposing such restrictions absent a "clear record and specific findings" that the defendant has engaged in abuse or misconduct.

Plaintiffs proceed here not with facts, or even suspicion, but only with assumptions. They *assume* any communication between a defendant or its counsel and potential class members is inherently improper. They *assume* such communication is inherently coercive. They *assume* that any communication will chill class participation. Assumptions like these are not enough. Nor is the mere possibility of abuse. Rather, proof is required. *See, e.g., Dziennik*, 2006 WL 1455464 at *3 ("[T]he mere possibility of abuses does not justify routine adoption of a communications ban that



interferes with the formation of a class or the prosecuting of a class action in accordance with the Rules.") (quoting *Gulf Oil*, 452 U.S. at 104). There are no cases – and plaintiffs have not cited any – where a court has been willing to restrict a defendant's communications with unrepresented potential class members based on a plaintiff's assumptions alone.

The thrust of plaintiffs' letter and its attachments is that this Court should give them the right to participate in defendant's investigation of this case. They ask the Court to order that a pre-interview notice be provided, that they have the right to approve that notice, that defendant's investigatory interviews be recorded, and that the interviews be scripted to plaintiffs' liking. They cite no authority for any of those extraordinary propositions, and there is none. Under the current system of litigation, parties are entitled to investigate their cases and prepare their claims and defenses independently and without the interference or participation of the opposing party. Plaintiffs' request would turn this procedure on its head.[1]

For the foregoing reasons, plaintiffs' request for a pre-motion conference, and for permission to file a motion to restrict defendant's communications or impose conditions that allow plaintiffs to participate in defendant's investigation and presentation of its defenses, should be denied.

Respectfully submitted,

SEYFARTH SHAW LLP

Robert S. Whitman

cc: Dan Getman, Esq. (by ECF)
Brent E. Pelton, Esq. (by ECF)
James Severson, Esq. (by ECF)
Ben Stone, Esq. (by ECF)

---

[1] In addition to presenting no factual support for their request, plaintiffs fail to justify the urgency of their Christmas-week application. The facts as of the date of their letter are no different than they have been throughout the duration of this case, including during the parties' Rule 26(f) conference in the fall and at the Rule 16 conference with Magistrate Judge Levy on November 17, when plaintiffs failed to mention anything about the need to restrain communications. Plaintiffs had no facts then to support an "urgent" application, and they have no facts now.

NY1 26603091.5

